IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL NUMBER |
| | : | 19-507 |
| v. | : | |
| | : | |
| ROBERT BRENNAN. | : | |
| | : | |

June  1st , 2021                                                                            Anita B. Brody, J.

## MEMORANDUM

On September 4, 2019, a grand jury indicted Robert Brennan, charging him with four counts of making a materially false statement under 18 U.S.C. § 1001. On July 13, 2020, Mr. Brennan filed a motion to dismiss the indictment due to outrageous government conduct. Mr. Brennan argues that the government engaged in outrageous conduct that violated his due process rights when FBI agents interviewed Mr. Brennan without his lawyer about alleged child abuse that had no federal nexus and was beyond the statute of limitations. Mr. Brennan contends that the sole purpose of the interview was to elicit materially false statements. For the reasons that follow, I will deny the motion.

**I.     BACKGROUND[1]**

Robert Brennan was a former Catholic priest in the Archdiocese of Philadelphia. *See* Brennan's Mot. to Dismiss the Indictment Due to Outrageous Government Conduct at 2, ECF No. 71. In 2013, S.M. alleged that he was sexually abused by Mr. Brennan while attending middle school at "Resurrection of Our Lord" ("Resurrection"), where Mr. Brennan served as a priest.[2] *Id.* As a result of S.M.'s allegations, the Philadelphia District Attorney's Office filed

---

[1] The facts in this section are taken from Mr. Brennan's brief in support of his motion.
[2] Throughout this opinion, I replace the alleged victim's name with the initials "S.M."

1

criminal charges against Mr. Brennan in September 2013. *Id.* at 2-3. Mr. Brennan retained Trevan Borum to serve as his lawyer for this matter. *Id.* at 3. One month later, S.M. passed away after a drug overdose. *Id.* Without S.M. as a witness, the District Attorney dismissed the case against Mr. Brennan. *Id.*

In November 2013, S.M.'s family filed a civil suit against Mr. Brennan and the Archdiocese of Philadelphia. *Id.* Trevan Borum also represented Mr. Brennan in the civil suit. *Id.* As part of the suit, Mr. Brennan was deposed. *Id.* On March 24, 2016, at the deposition Mr. Brennan was asked a series of questions about his knowledge of S.M. and his family. *Id.* In response to the questions, Mr. Brennan denied ever knowing S.M. or his family while S.M. was a student at Resurrection. *Id.* In 2018, the civil case reportedly settled. *Id.*

In October 2018, federal prosecutors in the Eastern District of Pennsylvania—along with the FBI—began an investigation focusing on uncovering potential federal crimes. *Id.* at 4. On April 25, 2019, as part of this investigation, two FBI agents drove from the FBI's Philadelphia field office to interview Mr. Brennan in his home in Perryville, Maryland. *Id.* at 4-5.

During the interview, the agents asked Mr. Brennan if he knew S.M. and his family. *Id.* The questions asked by the agents were similar to those asked by opposing counsel in Mr. Brennan's deposition in the civil lawsuit. *Id.* In response, Mr. Brennan told the agents that he did not know S.M. and or his family. *Id.*

On September 4, 2019, a grand jury issued an indictment charging Mr. Brennan with four counts of making a materially false statement under 18 U.S.C. § 1001. *Id.*

## II. Discussion

On July 13, 2020, Mr. Brennan filed a motion to dismiss the indictment due to outrageous government conduct. Mr. Brennan argues that the government's law enforcement techniques

violated Mr. Brennan's due process rights. The government argues that the FBI's conduct involved standard investigatory practices and was an appropriate part of an ongoing investigation into the Archdiocese of Philadelphia.

"The pertinent question is whether the government's conduct was so outrageous or shocking that it amounted to a due process violation." *United States v. Christie*, 624 F.3d 558, 573 (3d Cir. 2010). The threshold for outrageousness is not easily reached. "The judiciary is extremely hesitant to find law enforcement conduct so offensive that it violates the Due Process Clause." *United States v. Voight*, 89 F.3d 1050, 1065 (3d Cir. 1996) (citing United *States v. Jannotti*, 673 F.2d 578 (3d Cir. 1982)). Courts "should not exercise a 'Chancellor's foot' veto over law enforcement practices of which it does not approve." *United States v. Beverly*, 723 F.2d 11, 13 (3d Cir. 1983) (quoting *United States v. Russell*, 411 U.S. 423, 435 (1973)). Indeed, the defense has been reserved only for "the most intolerable government conduct." *Jannotti*, 673 F.2d at 608.

The Third Circuit has found only one instance where a defendant's right to due process was violated by the outrageousness of the government's conduct. *See United States v. Twigg*, 588 F.2d 373 (3d Cir. 1978). In *Twigg*, the defendants challenged their convictions for manufacturing methamphetamine hydrochloride ("speed") and other drug related offenses. *Id.* at 374. Undercover informants, at the direction of the Drug Enforcement Administration ("DEA"), approached the defendants, who were not involved in any ongoing criminal activity at the time, and suggested they establish a laboratory to manufacture speed. *Id.* at 375. The DEA then "gratuitously supplied" the majority of the materials to produce the drugs, including the essential chemical to create speed. *Id.* The DEA even provided a farmhouse to store the laboratory. *Id.* at 380. The Third Circuit determined that the totality of the government involvement in the

3

criminal activities reached a level of outrageousness to constitute a due process violation. *Id.*

In the nearly 45-years since *Twigg*, the Third Circuit has not recognized another instance where law enforcement conduct was so outrageous that it violated due process. "It appears the viability of the doctrine is hanging by a thread." *United States v. Nolan-Cooper*, 155 F.3d 221, 230 (3d Cir. 1998) (recognizing the existence of the doctrine, but observing the hesitancy of courts to apply it); *see also Jannotti*, 673 F.2d at 608-610 n.17 (distinguishing case from *Twigg* with three judges stating they would directly overrule *Twigg* in *en banc* rehearing). Despite the reluctance of courts to apply *Twigg*, it has not been overruled yet and "remains the touchstone for analysis within this circuit." *United States v. McLean*, 85 F.Supp.3d 825, 832 (E.D. Pa. 2015) (McHugh, J.).

In deciding *Twigg*, the Third Circuit did not outline a specific standard or test to determine what constitutes outrageous government conduct. The necessary analysis to determine whether government conduct is outrageous is fact-intensive and "by no means pellucid." *Voight*, 89 F.3d at 1064. The Third Circuit has noted that "courts have experienced considerable difficulty in translating 'outrageous misconduct' into a defined set of behavioral norms." *Nolan-Cooper*, 155 F.3d 221 at 230 (quoting *United States v. Santana*, 6 F.3d 1, 4 (1st Cir. 1993)).

In the absence of clear Third Circuit guidance, the Court in *United States v. McLean*, identified four factors it believed were critical to the Third Circuit's finding of outrageous government conduct in *Twigg*. 85 F.Supp.3d at 833. The four factors include: (1) the temporal relationship between the initiation of the crime and the initiation of the government's involvement; (2) the fleeting nature or elusiveness of the crime; (3) government instigation or origination; and (4) control of operations. *Id.* at 833-35. Mr. Brennan uses the four factors described in *McLean* to argue that the government's law enforcement techniques "were

outrageous and intolerable." *See* Brennan's Mot. to Dismiss the Indictment Due to Outrageous Government Conduct at 10. In particular, Mr. Brennan argues that the government initiated, contrived, and controlled the alleged crime when the agents intentionally questioned Mr. Brennan without a lawyer about allegations that were beyond the statute of limitations, had no federal nexus, and were already discussed with Mr. Brennan during his civil deposition. *Id.* at 10, 13-15. Mr. Brennan asserts that the agents "willfully caused the alleged crime such that it could not have occurred but for their actions." *Id.* at 13.

*McLean*, like *Twigg* however, involved undercover operations and the four factors do not as easily apply to the overt interview in Mr. Brennan's case. In Mr. Brennan's case, the FBI agents did not create or instigate any criminal activities, nor did they encourage Mr. Brennan's involvement in any criminal enterprise. There was no elaborate operation controlled by the government in which Mr. Brennan participated. As I previously ruled, the FBI agents conducted a noncustodial interview and Mr. Brennan consented to the questioning. *See* Mem. at 11, ECF No. 102. Based on Mr. Brennan's answers, the government alleges he lied. The interview is the extent of the government conduct in this case. The FBI agents did not use any trickery or deception and there was no indication during the interview that Mr. Brennan may have been represented. *See id*. at 8, 11. Additionally, as I ruled in this Court's Memorandum on Mr. Brennan's motions to dismiss the indictment for failure to state an offense and improper venue, an expired statute of limitations does not bar the initiation of a prosecution. *See* Mem. at 8-9, ECF No. 52; *see also United States v. Levine*, 658 F.2d 113, 120 (3d Cir. 1981). Although it may be likely that Mr. Brennan would not face the present charges if the FBI agents did not interview him, the interview itself did not constitute government overreach or intolerable conduct.

It follows that the government's actions in Mr. Brennan's case do not rise to the

necessary level of outrageousness to dismiss the indictment. In *Twigg*, the Third Circuit emphasized that the "nature and extent of police involvement in [the] crime was so overreaching" that it violated due process. 588 F.2d at 377. The government "set [the defendant] up, encouraged [the defendant], and provided the essential supplies and technical expertise" *Id.* at 388. There are simply no comparable facts in Mr. Brennan's case. The noncustodial interview was within the bounds of standard investigatory procedures and was a legitimate forum to give rise to potential § 1001 offenses. *See Brogan v. United States*, 522 U.S. 398, 402, 405 (1998).

Although the conduct in Mr. Brennan's case does not rise to the threshold articulated in *Twigg*, courts and scholars have raised concern about the great power the government has in prosecuting 18 U.S.C. § 1001 offenses. *See Brogan*, 522 U.S. at 408 (1998) (Ginsburg, J. concurring); *see also* Lisa Kern Griffin, *Criminal Lying, Prosecutorial Power, and Social Meaning*, 97 Calif. L. Rev. 1515, 1518 (2009); Louis Lang & Ian Duggan, *1001 is the Loneliest Number*, 32 JUL S.C. Law 34, 35 (2020).[3] In *Brogan v. United States*, Justice Ginsburg observed that by passing 18 U.S.C. § 1001, "Congress, perhaps unwittingly, has conferred . . . extraordinary authority . . . on prosecutors to manufacture crimes." 522 U.S. at 408. Justice Ginsburg expressed concern that the statute could allow the government to "generat[e] . . . a crime when the underlying suspected wrongdoing is or has become nonpunishable." *Id.* at 411. For example, if a crime is difficult to prove, prosecutors can "ask questions . . . to which [they] already know[] the answers," elicit a false denial, and "seek prosecution for the lie as a substitute for the crime [they] cannot prove." *Id.* (citation omitted). And "[i]f the statute of limitations has

---

[3] There has also been much discussion on the § 1001 offense following the Department of Justice's decision to withdraw § 1001 charges against national security advisor Michael Flynn. *See United States v. Michael Flynn*, Crim No. 17-232 (D.D.C); *see also* Charlie Savage & Adam Goldman, *Justice Department Defends Dropping Flynn Case and Again Asks Judge to Dismiss It*, NY Times (Jun 17, 2020), available at https://www.nytimes.com/2020/06/17/us/politics/justice-department-michael-flynn.html.

run on an offense," the "prosecutor can endeavor to revive the case by instructing an investigator to elicit a fresh denial of guilt." *Id.* at 411.

Mr. Brennan's case is an example of the precise concerns Justice Ginsburg identified in *Brogan*. The FBI went to Mr. Brennan's home in Maryland as part of a broad investigation into the Catholic Church, nineteen years after the alleged abuse and six years after his state criminal charges were dismissed. Due to the age of these allegations, Mr. Brennan's alleged criminal conduct was likely unreachable by federal prosecutors and the only charges he now faces are for alleged violations of § 1001. Despite these criticisms, however, the question of whether Congress "has conferred . . . extraordinary authority" on prosecutors for § 1001 offenses is not before me and I must deny the motion. *Id.* at 408.

### III. Conclusion

For the reasons given above, I will deny Mr. Brennan's motions to dismiss the indictment for outrageous government conduct.

                              *S/ Anita B. Brody*
                              ANITA B. BRODY, J.

**XC: Speedy Trial**

**Copies ecf _____ to:**                   **Copies mailed <u>06-01-2021</u> to:**

                                                    **Robert Brennan, defendant**