**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| **v.** | **:** | **CRIMINAL NO. 19-507** |
| **ROBERT BRENNAN** | **:** | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The defendant, a former Catholic priest, lied to the FBI when asked whether he knew a prominent family in the parish he served, which included a child he allegedly molested for years. For the reasons set forth below, the government requests a sentence of 5 years' probation with the first 24 months on home detention with location monitoring, consistent with the parties' plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).

The Third Circuit has set forth a three-step process which the district courts must follow in compliance with the Supreme Court's ruling in *United States v. Booker*, 543 U.S. 220 (2005):

> (1) Courts must continue to calculate a defendant's Guidelines sentence precisely as they would have before *Booker*.
>
> (2) In doing so, they must formally rule on the motions of both parties and state on the record whether they are granting a departure and how that departure affects the Guidelines calculation, and take into account our Circuit's pre-*Booker* case law, which continues to have advisory force.
>
> (3) Finally, they are to exercise their discretion by considering the relevant § 3553(a) factors in setting the sentence they impose regardless whether it varies from the sentence calculated under the Guidelines.

*United States v. Gunter*, 462 F.3d 237, 247 (3d Cir. 2006) (quotation marks, brackets, and citations omitted) (citing *United States v. King*, 454 F.3d 187, 194, 196 (3d Cir. 2006); *United*

*States v. Cooper*, 437 F.3d 324, 329-30 (3d Cir. 2006)). *See also United States v. Smalley*, 2008 WL 540253, *2 (3d Cir. Feb. 29, 2008) (stating that the *Gunter* directive is consistent with later Supreme Court decisions). In calculating the guideline range, this Court must make findings pertinent to the guideline calculation by applying the preponderance of the evidence standard, in the same fashion as was employed prior to the *Booker* decision. *United States v. Grier*, 475 F.3d 556 (3d Cir. 2007) (en banc). The failure to properly calculate the advisory guideline range will rarely be harmless error. *United States v. Langford*, 2008 WL 466158, *8-11 (3d Cir. Feb. 22, 2008).

At the third step of the sentencing process, the Court must consider the advisory guideline range along with all the pertinent considerations of sentencing outlined in 18 U.S.C. § 3553(a) in determining the final sentence. "The record must demonstrate the trial court gave meaningful consideration to the § 3553(a) factors. . . . [A] rote statement of the § 3553(a) factors should not suffice if at sentencing either the defendant or the prosecution properly raises 'a ground of recognized legal merit (provided it has a factual basis)' and the court fails to address it." *Cooper*, 437 F.3d at 329. *See also Rita v. United States*, 127 S. Ct. 2456, 2468 (2007) ("The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority."); *United States v. Schweitzer*, 454 F.3d 197, 205-06 (3d Cir. 2006).

The government explains below its view that the proper consideration in this case of the advisory guideline range and of the Section 3553(a) factors should result in a guidelines sentence of 5 years' probation with the first 24 months on home detention with location monitoring.

## I. BACKGROUND

In October 2018, the Philadelphia Field Office of the FBI opened an investigation of the Roman Catholic Church ("the Church") regarding widespread child sexual abuse by clergy and the Church's concealment of that abuse. Presentence Report ("PSR") ¶ 20. This followed a Pennsylvania Attorney General grand jury investigation announced in August 2018, as well as Philadelphia County grand jury investigations in 2005 and 2011. *Id.* ¶¶ 14-19.

The grand jury investigations had revealed allegations of sexual abuse against dozens of current and former priests, including defendant Robert Brennan. *Id.* Specifically, these reports alleged that Brennan had engaged in "inappropriate or suspicious" behavior with more than 20 boys from four different parishes. *Id.* ¶14. Following the 2011 grand jury report, an additional victim, S.M., came forward in 2013, who reported to the Philadelphia Police Department that the defendant sexually abused him between 1998 and 2001 when he was a minor and middle school student at Resurrection of Our Lord School and a parishioner at Resurrection of Our Lord Church in Philadelphia, Pennsylvania. *Id.* at ¶17. Based on S.M.'s report to the Philadelphia Police Department, in September 2013, defendant Robert Brennan was arrested and charged with sexual assault and related offenses in Philadelphia County; however, the charges were ultimately dismissed after S.M. died of a drug overdose. *Id.* S.M.'s mother and father, D.M. and M.M., Sr.—also parishioners at Resurrection of Our Lord Church between 1998 and 2001—thereafter filed a civil suit against the defendant, as well as the Archdiocese of Philadelphia, on behalf of S.M.'s estate, which resulted in a settlement in May 2018. *Id.* ¶18.

The object of the FBI investigation that commenced in October 2018 was to determine whether any federal offenses, including those enumerated in chapters 109A, 110, and 117 and

Section 1591 of Title 18 of the United States Code, had been committed. *Id.* ¶ 20.

As part of their investigation, on or about April 25, 2019, FBI Supervisory Special Agent Scott Mayne and Special Agent Michael Dzielak traveled to Perryville, Maryland, to the home of defendant Brennan to interview him. *Id.* ¶21. During that interview, agents showed the defendant a photo depicting the defendant and S.M. taken at S.M.'s middle school graduation from Resurrection of Our Lord School and asked the defendant if he knew S.M. Defendant Brennan said he did not. *Id.* Agents reminded him of the criminal charges and civil suit. *Id.* Defendant Brennan then knowingly and intentionally made four statements. *Id.* Specifically, he stated that, prior to the criminal charges relating to the sexual abuse of S.M. and the civil lawsuit, he: (1) did not know S.M.; (2) did not know S.M.'s father, M.M., Sr.; (3) did not know S.M.'s mother, D.M.; and (4) did not know S.M.'s brother, M.M., Jr. *Id.*

These statements were false. In fact, the M. family was well known within the parish and numerous people observed that the defendant appeared familiar with S.M. and other M. family members. *Id.* ¶ 22. Members of the M. family and others were able to recount specific interactions they observed between the defendant and S.M. or other M. family members. *Id.*

## II. <u>SENTENCING CALCULATION</u>

### A. <u>Statutory Maximum Sentences</u>.

Counts One through Four (making a material false statement) each carry an 8-year maximum term of imprisonment, 3 years of supervised release, a $250,000 fine, and a $100 special assessment.

The <u>total possible sentence</u> is a maximum term of 32 years in prison, a 3-year period of supervised release, a $1,000,000 fine, and a $400 special assessment.

**B. Sentencing Guidelines Calculation.**

The Plea Agreement between the parties reflects a stipulation that 3 points are subtracted for acceptance of responsibility, pursuant to USSG § 3E1.1, and that the defendant will not seek "credit for time served" in relation to any home detention or location monitoring imposed as part of his pre-trial release. The parties have agreed to recommend a sentence of 5 years' probation with the first 24 months on home detention with location monitoring under Federal Rule of Criminal Procedure 11(c)(1)(C).

The Probation Office has determined a base offense level of 14, pursuant to USSG § 2J1.2(a), plus 4 points because the false statements related to a sex offense, pursuant to USSG § 2J1.2(b)(1)(A), for a total of 18. Subtracting 3 points for acceptance of responsibility under USSG § 3E1.1 leads to a total offense level of 15. PSR ¶ 38. Given a criminal history category of I, *id.* ¶ 42, this corresponds to a guidelines range of 18 to 24 months. *Id.* ¶ 83.

## III. ANALYSIS

A thorough consideration of all of the sentencing factors set forth in 18 U.S.C. § 3553(a) suggests that this Court should consider the calculation of the advisory guidelines as set forth in the PSR, the agreement of the parties set forth in the plea agreement, review all other factors, and impose a sentence of 5 years' probation with the first 24 months on home detention with location monitoring.

The Supreme Court has declared: "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 128 S. Ct. 586, 596 (2007). The Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal

offenses.

This Court must also consider all of the sentencing considerations set forth in Section 3553(a). Those factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).

**A. Nature and circumstances of the offense.**

The defendant had a choice when the FBI came to his doorstep on April 25, 2019. He could have turned them away, or he could have told the truth. Instead, he held close to his lies, claiming not to know a family with whom he had interacted on countless occasions, and a child whom he allegedly molested multiple times - - a child whose life was cut tragically short at the age of 26 after he revealed that Brennan had sexually abused him, and Brennan was arrested. The defendant's lies to the FBI were criminal in that they had the natural tendency to influence a decision or function of the FBI, which was investigating possible federal offenses committed by Archdiocesan priests that may have been still viable within the federal statute of limitations, and a possible conspiracy within the Church to cover up such crimes. But the defendant's lies also

retraumatized this family[1] in ways that are difficult to comprehend, quantify, or repair. In this instance, Brennan didn't deny molesting their son, he denied knowledge of his very existence, which is a form of cruelty unto itself.

**B. The history and characteristics of the defendant.**

The defendant had a long career as a Catholic priest, marred by continuous and sustained allegations that he was "excessively involved" with young boys, and later outright accusations of molestation, leading to his laicization in 2017. PSR ¶¶ 70-74. The claims against the defendant led to him being admitted to the Archdiocese's "treatment" program for priests with inclinations toward children at St. John Vianney Center in Downingtown, Pennsylvania, first in 1988, and again in 1992. PSR ¶¶ 59-63. Contemporaneously, the Archdiocese moved the defendant from parish to parish to be placed among unsuspecting parishioners and their children, with the full awareness of the Church hierarchy of the dangers he posed. *Id.* ¶¶ 69-74.

The defendant is now 84 years old, is being treated with medication for high cholesterol and high blood pressure, and lives with a retired priest in Maryland. *Id.* ¶¶ 53, 56. Conditions of probation should include no unsupervised contact with minors.

**C. The need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide punishment for the offense.**

Lying to the FBI is a serious offense that warrants significant punishment. Given the defendant's advanced age, being on home confinement with location monitoring will pose a

1 M.M., Sr., D.M., and M.M., Jr. are clearly victims of this offense under the plain language of 18 U.S.C. §3663A(2), which defines a "victim" as "a person directly and proximately harmed as a result of the commission of an offense . . . ." Here, the defendant made the false statements *about* these individuals and their immediate family member, S.M., and they suffered emotional harm as a result.

serious impediment to his enjoyment of the remainder of his life for a substantial period of time. It will reflect the seriousness of the offense, promote respect for the law, and punish him for the offense.

**D. The need to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant.**

Home confinement with location monitoring for two years for a person who is 84 years of age is designed to substantially inhibit the defendant's freedom. This is likely to deter him from further criminal conduct and protect the public.

**E. The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

There is no indication that the defendant needs any training or treatment.

**F. The guidelines and policy statements issued by the Sentencing Commission, and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

The defendant's sentence represents a downward variance from the sentencing guidelines of 18 to 24 months. However, the parties believe that the sentence of 24 months' home confinement with location monitoring is sufficient but not greater than necessary to achieve the goals of sentencing, taking into account the nature of the offense and the characteristics of this defendant.

**G. The need to provide restitution to any victims of the offense.**

There is no restitution in this case.

## IV. CONCLUSION

For the reasons set forth above, the government respectfully requests that the Court sentence the defendant to 5 years' probation with the first 24 months on home detention with location monitoring.

Respectfully submitted,

JENNIFER ARBITTIER WILLIAMS
United States Attorney

_*/s Michelle L. Morgan*_______
MICHELLE L. MORGAN
Assistant United States Attorney
Chief, Corruption & Civil Rights Unit

**CERTIFICATE OF SERVICE**

I certify that on this day I caused a copy of the Government's Sentencing Memorandum to be served by electronic filing, and/or electronic mail, addressed to:

Katrina Young, Esq.
Assistant Federal Defender
katrina.young@fd.org

___*/s/ Michelle L. Morgan*_____
MICHELLE L. MORGAN
Assistant United States Attorney

Dated: March 24, 2022